UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Bonnie L. M.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-416 |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Bonnie M., on September 27, 2019. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Bonnie M., filed an application for Supplemental Security Income on January 28, 2017 following an earlier June 16, 2015 denial of disability. (Tr. 20). She alleged a July 10, 2012 date of disability both in the original application and the current application. (Tr. 20). However, the ALJ found that the record did not support evidence that was both new and material. Therefore, the ALJ found that the new alleged onset date is January 28, 2017, the date of her current application. (Tr. 20). The Disability Determination Bureau initially denied Bonnie M.'s application on June 27, 2017, and again upon reconsideration on August 28, 2017. (Tr. 20). Bonnie M. subsequently filed a timely request for a hearing on September 19, 2017. (Tr. 20). A hearing was held on June 11, 2018, before Administrative Law Judge (ALJ) Steven J. Glaser, and he issued an unfavorable decision on October 25, 2018. (Tr. 17-28). Vocational

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

Expert (VE) Brian L. Womer appeared at the hearing. (Tr. 20). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Bonnie M. had not engaged in substantial gainful activity since January 28, 2017, her alleged onset date. (Tr. 22). At step two, the ALJ determined that Bonnie M. had the following severe impairments: chronic obstructive pulmonary disease (COPD), asthma, and emphysema. (Tr. 22). The ALJ found that the above medically determinable impairments significantly limited Bonnie M.'s ability to perform basic work activities. (Tr. 22). The medical record also indicated that Bonnie M. suffered from "all manner" of upper and lower musculoskeletal complaints, migraines, diverticular disease, sleep apnea, mesh sling implant residuals, and mental health conditions, but the ALJ found that these impairments did not reach the durational requirement that would warrant greater limitations than those listed in the RFC. (Tr. 22).

At step three, the ALJ concluded that Bonnie M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 23). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 23).

After consideration of the entire record, the ALJ assessed Bonnie M.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except as reduced by the following. The claimant retains the capacity to frequently balance and climb ramps/stairs, occasionally stoop and knee, but unable to engage in crawling, crouching or climbing ladders, ropes or scaffolds. The claimant must also avoid concentrated exposure to dusts, fumes, gases, excessive heat/cold, humidity and other respiratory irritants.

(Tr. 24). The ALJ explained that he followed a two-step process in considering Bonnie M.'s symptoms. (Tr. 24). First, he determined whether there was any underlying medically determinable physical or mental impairments that were shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Bonnie M.'s pain or other symptoms. (Tr. 24). Then he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Bonnie M.'s functioning. (Tr. 24).

After considering the evidence, the ALJ found that Bonnie M.'s medically determinable impairments reasonably could be expected to produce her alleged symptoms. (Tr. 25). However, he found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence, or any evidence, in the record. (Tr. 25).

At step four, the ALJ found that Bonnie M. had no past relevant work but that jobs exist in significant numbers in the national economy that she could perform. (Tr. 27). Therefore, the ALJ found that Bonnie M. was not disabled, as defined in the Social Security Act, from January 28, 2017, through the date of the ALJ's decision. (Tr. 28).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct

3

legal standards and supported her decision with substantial evidence"). Courts have defined substantial evidence as such relevant "evidence as a reasonable mind might accept to support such a conclusion." ***Zoch v. Saul***, 2020 WL 6883424, at *3 (7th Cir. Nov. 24, 2020); ***Biestek v. Berryhill***, 139 S. Ct. 1148, 1154 (2019); ***Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404,**

**subpt. P, app. 1**.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work.  If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled.  **20 C.F.R. § 404.1520(e)**.  However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see Biestek v. Berryhill,* 139 S. Ct. 1148 (2019) (upon the request of a disability benefits applicant, a vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Bonnie M. has requested that the court remand this matter for additional proceedings.  In her appeal, Bonnie M. has argued that the ALJ erred by failing to include limitations caused by her mesh-sling removal.

In determining a claimant's RFC, the ALJ evaluates "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments" ***Moore v. Colvin***, 743 F.3d 1118, 1121 (7th Cir. 2014); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations"); **SSR 96-8p**, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity

to do work-related physical and mental activities").  The RFC is based upon medical evidence—including statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family."  *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation.  In the section titled, "Narrative Discussion Requirements," **SSR 96-8p** specifically spells out what is needed in the ALJ's RFC analysis.  This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

**SSR 96-8p** (footnote omitted).  Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision.  "The ALJ is not required to address every piece of evidence or testimony presented, but [she] must provide a 'logical bridge' between the evidence and his conclusions."  *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).  Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions.  *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected") (citing *Terry v. Astrue*, 580

6

F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

An ALJ must "consider the limitations imposed by all impairments, severe and non-severe." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019); **20 C.F.R. §416.923**. The duty to analyze non-severe impairments in formulating a claimant's RFC to be used at steps four and five is fundamental to the disability programs under the Social Security Act. *See Bowen v. Yucker*, 482 U.S. 137, 150-51, 107 S. Ct. 2287, 96 L.Ed. 2d 119 (1987) (emphasizing the duty of the Commissioner, when there is at least one severe impairment, to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity" (quoting **42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(F)** (1982 ed. And Supp. III)). "Although the non-severe impairments may not have an effect on the claimant's RFC ultimately, the ALJ [is] required to explain why." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010).

The ALJ noted Bonnie M.'s mesh sling implant residuals but found that the "medical records do not show these conditions to significantly impair or limit [her] ability to sustain work activity." (Tr. 22). The ALJ also found that although Bonnie M. reported urinary incontinence stemming from both the September 2016 mesh sling implant and subsequent removal, "the overall record does not support a resulting severe condition (*i.e.* "very mild") or condition that cannot be address[ed] conservatively with pads, and as to use of pads, the record noted such are not required[.]" (Tr. 24).

Bonnie M. testified that she had a mesh bladder sling implanted due to incontinence, but that the mesh sling caused her pain. (Tr. 45). She further testified that she suffered from

7

multiple urinary tract infections while she had the sling.  (Tr. 46-47).  She also testified that after the mesh sling removal, her incontinence returned.  (Tr. 46-47).

As an initial matter, Bonnie M. does not point to anything in the medical record that indicates she required more limitations than those in the RFC.  Nor does Bonnie M. allege that her impairments resulting from the mesh sling implant and removal created more significant limitations when combined with her other impairments.  She simply states that the ALJ "fail[ed] to wrestle with … the significance of that her urologist thought mesh removal was a viable option."  [DE 16 at 11].  Bonnie M. does not clarify what that significance was, nor does she explain how her testimony about "difficulties between the mesh implantation and the mesh removal" caused further functional limitations.  [DE 16 at 11].  She cites to the urologist's opinion regarding her condition, wherein the specialist noted that the sling removal might not resolve her pain and might cause new pain.  [DE 16 at 5].  The specialist also noted that her urinary incontinence might recur and that her urinary tract infections might not improve.  [DE 16 at 5].  However, Bonnie M. does not allege how this opinion was significant or how it provided an explanation for the need of functional limitations.  The most that Bonnie M. alleges in her opening brief is that her pain lasted for more than one year.  However, she does not allege that such pain caused functional limitations requiring more severe limitations than provided for in the RFC.

The ALJ properly noted that Bonnie M.'s mesh-sling implant and removal caused no more than temporary, non-severe issues.  The ALJ noted that Bonnie M. testified that many of her issues were resolved when the mesh sling was removed.  The only issue that remained was Bonnie M.'s occasional incontinence.  (Tr. 46-47).  However, the ALJ found that the incontinence did not support a severe impairment.  (Tr. 24).  The ALJ also noted that her

8

incontinence could be conservatively addressed with the use of pads, although the record noted that Bonnie M. did not require the use of pads.  (Tr. 470, 473, 867-68).  In fact, the medical record specifically stated that Bonnie M. was offered conservative treatment (including Kegel exercise, biofeedback, and anti-cholinergic medical therapy), or no treatment, and that she chose either conservative or no treatment at various times.  (Tr. 470, 473).

      The ALJ adequately discussed Bonnie M.'s mesh sling implant and removal and found those impairments to be non-severe.  Bonnie M. has not alleged any functional limitations caused by those impairments, nor has she provided any medical evidence that shows the condition was worse than the ALJ found.  The ALJ did not err in finding her mesh implant and removal to be a non-severe impairment that did not require further limitations in the RFC.

      Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED.**

      ENTERED this 9th day of December, 2020.

                                                      /s/ Andrew P. Rodovich
                                                      United States Magistrate Judge